UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

STEVEN DE SHAZO,

          Plaintiff,

   v.

TOM P. HIENG,

          Defendant.

_____/

CASE NO.    1:07-cv-01258-OWW-MJS (PC)

FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANT HIENG'S MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES BE DENIED

(ECF No. 25)

OBJECTIONS DUE WITHIN THIRTY DAYS

I.    **PROCEDURAL HISTORY**

Plaintiff Steven De Shazo ("Plaintiff") is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's May 1, 2008 First Amended Complaint alleging use of excessive force by Defendant.  (ECF No. 10.)  On February 4, 2010, the Court found Plaintiff's claim of excessive force cognizable and ordered service on Defendant Tom P. Hieng.  (ECF No. 14.)

1

Pending before the Court is a Motion to Dismiss filed by Defendant.  (ECF No. 25.) Plaintiff filed an Opposition to the Motion and an Addendum to his Opposition, and Defendant filed two Replies.  (ECF Nos.  42 & 44; 39 & 45.)

## II.    FIRST AMENDED COMPLAINT

In his First Amended Complaint, Plaintiff alleges that on June 5, 2006 he filed a CDC-602 Inmate Appeals form ("602") and a CDC-1824 Reasonable Modification Request ("1824") describing the excessive force used by Defendant Hieng and gave them to Defendant Hieng "for placement in the CSP-Cor mail collection system to be delivered to the institution inmate appeals office." (Pl.'s First Am. Compl. ¶ 17.) Plaintiff never received a response to either of these filings.

On September 5, 2006, Plaintiff submitted another 602 form alleging staff misconduct.  It was returned to Plaintiff for failure to state the date of the incident.  Plaintiff claims  he resubmitted the 602 by giving it to Defendant Hieng for delivery.  (Id. Ex. E.)

Plaintiff submitted a second 1824 form on November 6, 2006.  (Id. ¶ 18.)  It was partially granted at the second level of review but denied at the Director's level.  (Id. ¶ 21.) Though Plaintiff had included his version of the disputed use of force, it was not addressed in CDCR's response to his appeal.  CDCR focused only on medical complaints in Plaintiff's 1824 claim.  (Id. ¶¶ 21-22, Exs. G & H.)

Plaintiff also submitted a letter to the Office of Internal Affairs describing the excessive force incident. (Id. ¶ 19.)  It was returned  to Plaintiff with a note telling him he needed to file an inmate appeal.  (Id. ¶ 20.)

## III.    LEGAL STANDARD

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

"The Prison Litigation Reform Act [("PLRA")] requires that a prisoner exhaust available administrative remedies before bringing a federal action concerning prison conditions." Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a)); Brown v. Valoff, 422 F.3d 926, 934 (9th Cir. 2005) (quoting Porter v. Nussle, 534 U.S. 516, 525 n.4 (2002)) (The PLRA "creates 'a general rule of exhaustion' for prisoner civil rights cases."). "'[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002) (quoting Porter, 534 U.S. at 532); accord Roles v. Maddox, 439 F.3d 1016, 1018 (9th Cir.)).   The PLRA's "exhaustion requirement is mandatory." McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam); accord Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); see also Panaro v. City of North Las Vegas, 432 F.3d 949, 954 (9th Cir. 2005) (The PLRA "represents a Congressional judgment that the federal courts may not consider a prisoner's civil rights claim when a remedy was not sought first in an available administrative grievance procedure.").   Even if the prisoner seeks monetary or other relief that is unavailable through the grievance system in question, the prisoner must still first exhaust all available administrative remedies. See Booth v. Churner, 532 U.S. 731, 741 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.").

While the PLRA requires "proper" exhaustion of available administrative remedies, Woodford v. Ngo, 548 U.S. 81, 93 (2006), it does not define the boundaries of proper

exhaustion.   See Jones, 549 U.S. at 218.   Rather, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  Woodford, 548 U.S. at 90.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones, 549 U.S. at 218; see, e.g., Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009, as amended June 5, 2009) (per curiam) ("The California prison system's requirements define the boundaries of proper exhaustion.") (internal quotation marks and citation omitted). Absent a prison grievance procedure mandating the naming of each individual involved, a prisoner need not identify all of the defendants later named in a lawsuit during the administrative grievance process.  Jones, 549 U.S. at 218.

The PLRA's exhaustion requirement is not jurisdictional; rather, it creates an affirmative defense that a defendant may raise in an unenumerated Rule 12(b) motion. See Jones, 549 U.S. at 213-14; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003).  The defendant bears the burden of raising and proving the absence of exhaustion.  Wyatt, 315 F.3d at 1119.  Specifically, the defendant must show that some administrative relief remains available to the plaintiff "whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process."  Brown, 422 F.3d at 936-37.  In deciding a motion to dismiss for failure to exhaust, a court may "look beyond the pleadings and decide disputed issues of fact."  Wyatt, 315 F.3d at 1119-20.  When a prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Id. at 1120.  However, dismissal of the entire complaint is not required when a prisoner has

4

exhausted some, but not all, of the claims included in the complaint.  See Jones, 549 U.S. at 223-24.

In order for California prisoners to exhaust administrative remedies, they must proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

In a parallel procedure, California state prisoners may submit ADA requests for reasonable accommodation, or "grieve" an issue of alleged discrimination based on disability, using CDC Form 1824.  Prisoners may exhaust such requests under the three-step review procedure for regular inmate appeals, with the exception that there is no informal review and the first level of review may not be waived.  Cal. Code Regs. tit. 15, § 3085.  In order to appeal a decision on an ADA request, the prisoner must attach the original request to a CDC Form 602 and complete Section "F" of the 602.  Cal. Code Regs. tit. 15, § 3085(b).

**IV.   ANALYSIS**

In the instant Motion, Defendant argues that Plaintiff failed to properly exhaust administrative remedies available to him as required under the PLRA.  First, Defendant disputes Plaintiff's claim that he submitted a 602 grievance to Defendant on June 5, 2006.  Second, Defendant argues that Plaintiff did not resubmit a 602 grievance in September 2006.  Third, Defendant contends that neither of Plaintiff's submissions (the November

5

1824 and the letter to Internal Affairs) exhausted Plaintiff's administrative remedies for the excessive force claim.

In his Opposition to the Motion, Plaintiff argues that CDCR was put on notice of Defendant's misconduct through the 1824 form filing process because Plaintiff described Defendant's excessive use of force during the interview at the first level of the appeal process.   Plaintiff further contends that because both the 1824 and 602 grievance procedures are part of the same appeal process, CDCR was also put on notice of Plaintiff's complaint when Plaintiff pursued the 1824 grievance appeal to the third level.   Plaintiff points to  the attachment to his Opposition, a list of his grievances and appeals in the Inmate Appeals Tracking System ("IATS").   Plaintiff states that the entry on June 13, 2006 demonstrates that he filed a 602 grievance regarding the incident, but that prison officials failed to do anything about it.   In the Addendum to his Opposition, Plaintiff asks that the Court take judicial notice of Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008) as he claims it is similar to this action.

In his Replies, Defendant argues that Plaintiff has not put forth any evidence other than his own allegations that Defendant destroyed any 602s; that the 602 that Plaintiff claims prison officials failed to follow through on was screened out for a proper purpose (being duplicative of a previously filed grievance); and that Turner v. Burnside is inapplicable here.

**A.    Plaintiff's November 1824 Did Not Exhaust Admin Remedies**

Plaintiff states that he filed an 1824 claim in November 2006, which he pursued through the three levels of the prison appeal process and which ultimately was denied at the Director's Level.   Defendant argues that filing an 1824 claim does not satisfy the

administrative remedy process for a staff misconduct complaint and, therefore, did not exhaust Plaintiff's claim in this case.

An 1824 claim form is used to allege discrimination based on disability or to request reasonable accommodation under the Americans with Disabilities Act.  See Cal. Code Regs., tit. 15, § 3085(a).  Plaintiff's November 1824 claim focused on his medical issues and the lack of medical care for them.  As to use of force, he stated only that he had been "kneed in the back" and then requested medical attention.  (Pl.'s First Am. Compl. Ex. D.) He failed to identify a perpetrator or even to suggest that the perpetrator was a prison official.  There is nothing in  the November 1824 form and subsequent appeal process to alert the prison to any problem with Defendant.

A claim which does not notify the prison of alleged staff misconduct  can not be said to have exhausted administrative review requirements for that claim; it can not be reviewed if it is not known to exist.  See Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) ("The primary purpose of a grievance is to notify the prison of a problem, and facilitate its resolution.")

**B.     Plaintiff's Letter to Internal Affairs Did Not Exhaust Admin Remedies**

Plaintiff also sent a letter to the CDCR Office of Internal Affairs in December 2006. (Pl.'s First Am. Compl. Ex. E.)  In it he described the incident and complained about Defendant's conduct.  (Id.)  He went on to describe his own subsequent actions including his filing of the 602s and 1824s.  (Id.)  In response, Plaintiff received a memorandum from the Inmate Appeals Office stating that the issues described by Plaintiff would be better addressed through the appeal process.  (Pl.'s First Am. Compl. Ex. F.)  It further invited Plaintiff to file a 602 form if he wanted to pursue the issue.  (Id.) Defendant contends that,

1
2
this letter also failed to put CDCR on notice of Plaintiff's misconduct complaint against Defendant.

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
The Court finds that the letter was sufficient to place CDCR on notice of Plaintiff's complaint regarding Defendant's conduct.  The reply memo states that Plaintiff's letter had been forwarded to the Inmate Appeals Office for further review.  This would have put CDCR on notice of Plaintiff's attempts to file grievances and of the conduct of which he was complaining.  This was enough to notify CDCR of the problems.  It was not, however, sufficient to exhaust Plaintiff's administrative remedies.  As recommended in the reply memo, Plaintiff should have filed a 602 grievance form about the incident.  See Wilson v. Wann, 2008 WL 4166886, *2 (E.D. Cal. Sept. 8, 2008) (letters to Internal Affairs and warden were insufficient to show exhaustion); see also Lees v. Felker, 2009 WL 2824862, *5 (E.D. Cal. Sept. 1, 2009) (letter to warden is not an alternative method to the inmate grievance process for exhausting administrative remedies); Panaro v. City Of North Las Vegas, 432 F.3d 949, 954 (9th Cir. 2005) (participation in internal affairs investigation did not exhaust); Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) (informal complaints did not exhaust); Singh v. Goord, 520 F.Supp.2d 487, 495 (S.D.N.Y. 2007) (letter to warden did not exhaust).

21
22
**C.      Plaintiff's Attempt to Submit Timely 602s Exhausted His "Available" Admin Remedies**

23
24
25
26
It is undisputed that there is no record in the IATS of Plaintiff's June 602 or his resubmitted September 602.  Plaintiff claims that he gave both 602s to Defendant Hieng for delivery.  Defendant Hieng denies that he received or destroyed the grievances.

27

While the absence of evidence that a grievance was officially filed may indicate that a plaintiff never submitted the grievance, it may also indicate that the grievance was discarded or ignored by staff.  See Spence v. Director of Corr., 2007 WL 61006, *3 (E.D.Cal. Jan. 8, 2007) (If prison officials "are interfering with inmates' ability to properly file their 602s, then there will be no official record of the 602s having been 'accepted.'"), findings and recommendations adopted in full, 2007 WL 738528 (E.D. Cal. Mar. 6, 2007).

In this case, there are competing sworn statements as to whether Plaintiff filed a timely 602.  In an attachment to his Complaint, Plaintiff states that he prepared a 602 grievance form on June 5, 2006, the night of the incident.  (ECF No. 10 pp. 33-34; Pl.'s First Am. Compl. Ex. E, pp. 2-3.)  Plaintiff claims that he gave the form to Defendant who was picking up mail that evening and, instead of taking the 602 for delivery, Defendant "balled up" the form in front of Plaintiff.  (Id.)   In his sworn statement, Defendant refutes that Plaintiff gave him a 602 form or that he "balled [it] up." (ECF No. 26, p. 2; Def.'s Decl. ¶¶ 7 & 8.)

Also in an attachment to his Complaint, Plaintiff states that he filed another 602 grievance about the June incident in September 2006.  (Pl.'s First Am. Compl. Ex. E, p. 3.) The form was screened out and returned to Plaintiff because he failed to date it.   (Id.) Plaintiff states that he dated it and placed it on his door for mail pick up.  (Id.)  Defendant picked up the mail that day, and Plaintiff never saw his resubmitted 602 grievance again. (Id.)  Defendant agrees that Plaintiff's September 602 grievance was screened out, as there is a record of it in IATS.  (ECF No. 27, p. 3; Jones Decl. ¶ 13.)  However, Defendant contends that Plaintiff failed to re-file the grievance as there is no record of such refiling in the IATS.  (Id.)  Defendant also refutes that Plaintiff gave him the September 602 to re-

9

file.  (Def.'s Decl. ¶ 8.)

The PLRA requires that an inmate exhaust such administrative remedies "as are available." 42 U.S.C. § 1997e(a).  As the Ninth Circuit has repeatedly reiterated, the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable."  Sapp v. Kimbrell, 623 F.3d 813 (9th Cir. 2010).  If employees of a facility prevent or interfere with the filing of a grievance or the inmate's ability to exhaust administrative remedies, the exhaustion requirement may be "unavailable" and defendants estopped from raising non-exhaustion as an affirmative defense.  See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).  Courts have repeatedly held that an administrative remedy becomes "unavailable" for purposes of the exhaustion requirement if prison officials do not respond to a properly filed grievance or if they otherwise use affirmative misconduct to thwart a prisoner's attempts to exhaust.  See e.g., Brown v. Valoff, 422 F.3d 926 n.18 (9th Cir. 2005); Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) ("we refuse to interpret the PLRA 'so narrowly as to permit prison officials to exploit the exhaustion requirement through indefinite delay in responding to grievances.'"); Abney v. McGinnis, 380 F.3d 663, 667 (2nd Cir. 2004); Ziemba v. Wezner, 366 F.3d 161, 163-64 (2nd Cir. 2004); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (finding allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that the prisoner had exhausted his "available" administrative remedies); Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (holding that prisoner lacked available administrative remedy for exhaustion purposes where the prisoner was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms).

Plaintiff has submitted a sworn statement that he filed a timely 602 form and also resubmitted the 602 that had been returned to him.  The Court cannot ignore Plaintiff's sworn statements.  "In a situation such as this in which the parties offer differing versions of events based on competing declarations, the issue is one of witness credibility and the Court cannot make that requisite assessment on a motion to dismiss."  Buchanan v. Santos, 2010 WL 1267353, *5 (E.D. Cal. Mar. 31, 2010).  Thus, given the limited record before it, the Court is essentially compelled at this stage of the proceedings and accept Plaintiff's allegations that he attempted to exhaust his administrative remedies but was thwarted in doing so by Defendant.

## V.    CONCLUSION AND RECOMMENDATION

Therefore, the Court HEREBY RECOMMENDS that Defendant's Motion to Dismiss for failure to exhaust be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    February 14, 2011            /s/ Michael J. Seng

ci4d6                                          UNITED STATES MAGISTRATE JUDGE